Frano BATISTIC

v.

Alva L. PILLIOD, District Director, Chicago District U. S. Department of Justice, Immigration & Naturalization Service.

*No. 59 C 727.*

United States District Court
N. D. Illinois, E. D.
March 22, 1960.

James P. Piragine, Chicago, Ill., for plaintiff.

R. Tieken, U. S. Dist. Atty., Chicago, Ill., for defendant.

PERRY, District Judge.

Defendant, District Director, seeks an order under Rule 56 of the Federal Rules of Civil Procedure, 28 U.S.C.A. granting summary judgment and dismissing the complaint herein.

Frano Batistic, plaintiff, is a native and citizen of Yugoslavia who legally entered the United States on April 14, 1958 as a nonimmigrant visitor and who has been ordered deported under Section 241 (a)(2) of the Immigration and Nation-

ality Act of 1952, 8 U.S.C.A. § 1251(a)(2) on the ground that after admission as a nonimmigrant under Section 101(a)(15) of said Act, 8 U.S.C.A. § 1101(a)(15) he remained in the United States for a longer time than permitted.

On January 29, 1959, plaintiff made application under Section 243(h) of the Immigration and Nationality Act, 8 U.S.C.A. § 1253(h) for a stay of deportation on the ground that he would be physically persecuted if deported to Yugoslavia, and on February 25, 1959, a hearing and interrogation was held before a Special Inquiry Officer of the Immigration and Naturalization Service.

On March 30, 1959, the Special Inquiry Officer recommended that plaintiff's application for a stay be denied and on April 21, 1959, the Regional Commissioner of the Immigration and Naturalization Service, having reviewed that recommendation, ordered that plaintiff's application for stay of deportation be denied.

Plaintiff has instituted this proceeding under the Administrative Procedure Act, 5 U.S.C.A. § 1001 et seq., for a declaratory judgment that the entry of the order denying plaintiff's application to withhold deportation to Yugoslavia was an abuse of administrative discretion, was arbitrary and capricious, and was in excess of and an abuse of the authority and power of the defendant.

Plaintiff's deportability is not contested.

The record in this case shows, among other things, that plaintiff (who was 17 years old at the time of the hearing on his application for stay of deportation) was represented by counsel of his own choice, that he was assisted by an interpreter, and that during the course of the hearing three witnesses, called by him, testified in his behalf.

Plaintiff claimed that if deported to Yugoslavia he would be physically persecuted because of his religious and political beliefs.

Quoting in part from the language used by the Regional Commissioner in his order of April 21, 1959:

"He testified that he is a Roman Catholic and anti-Communist and will, therefore, be persecuted in Yugoslavia.

"His testimony establishes that he has never at any time been physically persecuted in Yugoslavia although he always attended religious services, and it was well known that both he and his family were anti-Communist. There is no evidence to indicate active opposition to the government of Yugoslavia as both he and his father were issued passports and permitted to visit the United States. His father has returned to Yugoslavia and no claim has been made that he has been physically persecuted since his return.

"In re Rudolf Kale, A9 555 532, April 23, 1958, it was stated that from various sources, including the personal observations of officers of this Service in that country it was found that:

" 'Churches throughout the country are open for public worship and religious assembly and they are being maintained and repaired, obviously with Government permission, if not with its approval or support. It must also be recorded that the Yugoslav regime granted asylum to thousands of anti-Communist Hungarians fleeing the latter country, and it refused to repatriate them involuntarily, while assisting in arrangements to settle them in western countries.'

"It is evident from the foregoing that physical persecution because of religious or anti-communistic beliefs does not exist in Yugoslavia today.

"In addition to his general claim of physical persecution on account of religious and political beliefs, this applicant has advanced and stressed the further claim that he will be physically persecuted while undergoing his military training in Yugoslavia by being assigned to some obscure post or camp. This claim must

be rejected as pure conjecture on the part of the applicant as he certainly has no advance knowledge of how, when or where he will undergo military training or even if he will undergo such training at all.

"After examination of the entire record and other available information, it is concluded that the applicant will not be physically persecuted if deported to Yugoslavia at this time. The findings and recommendation of the Special Inquiry Officer will be approved and adopted, and a stay of deportation under Section 243(h) will be denied."

Section 243(h) of the Immigration and Nationality Act (8 U.S.C.A. § 1253(h)) authorizes the Attorney General "to withhold deportation of any alien within the United States to any country in which in his opinion the alien would be subject to physical persecution and for such period of time as he deems to be necessary for such reason." Discretion is clearly vested in the Attorney General by the statute.

In United States of America ex rel. Cantisani v. Holton, 7 Cir., 1957, 248 F.2d 737, 738, (a habeas corpus proceeding) the court said:

"In the field of immigration and nationality, Congress has vested wide discretionary powers in the executive branch of the government. United States ex rel. Leong Choy Moon v. Shaughnessy, 2 Cir., 218 F.2d 316, 318. The Attorney General or his delegate has been given a wide area of discretion in those cases where the alien believes that he would be subjected to persecution if deported to a specified country. United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 206 F.2d 392, 394. However, where an alien has been accorded procedural due process and his aplication has received fair consideration, courts may not substitute their judgment for that of the Attorney General or his representative. See, United States ex rel. Cian-

namea v. Neelly, 7 Cir., 202 F.2d 289, 293.

"The comparable section to § 243 (h) in the predecessor statute (§ 23 Internal Security Act of 1950, 64 Stat. 1010) provided: 'No alien shall be deported under any provisions of this Act to any country in which the Attorney General shall find that such alien would be subjected to physical persecution.' The change in language in the present statute has been interpreted by the courts as indicating an attempt by Congress that in cases where the alien claims he would be subjected to physical persecution, the determination of such claim shall rest in the administrative judgment and the opinion of the Attorney General or his delegate, United States ex rel. Dolenz v. Shaughnessy, 2 Cir., 206 F.2d 392, and United States ex rel. Leong Choy Moon v. Shaughnessy, 2 Cir., 218 F.2d 316, assuming, of course, the alien has been afforded procedural due process and that the hearings as conducted were not manifestly unfair to him."

A review of the entire record in this case convinces this court that in the hearing on his application to stay deportation the plaintiff herein was accorded procedural due process, and that his application received fair consideration. The record shows no unfairness, arbitrariness or capriciousness.

In Anderson v. Holton, 7 Cir., 1957, 242 F.2d 596, which was an appeal from an order "that suspension of deportation is a statutory privilege within the discretion of the Attorney General of the United States, that is 'Agency action by law committed to agency discretion,' and which accordingly was not available for review under 5 U.S.C. § 1009," the court said, at page 597:

"Jay v. Boyd, 1956, 351 U.S. 345, 76 S.Ct. 919 [100 L.Ed. 1242], impressively attests to the unfettered discretion granted the Attorney General by § 244 of the Immigration and Nationality Act of 1952, 66 Stat.

215, 8 U.S.C.A. § 1254. Because Congress went on to confide such discretion in the Attorney General we think an instance of judicially nonreviewable administrative discretion arises under § 10 of the Administrative Procedure Act, 60 Stat. 243, 5 U.S.C.A. § 1009 providing:

" 'Except so far as * * * (2) agency action is by law committed to agency discretion * * *

" '(e) Scope of Review.—So far as necessary to decision and where presented the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of any agency action. It shall (A) compel agency action unlawfully withheld or unreasonably delayed; and (B) hold unlawful and set aside agency action, findings, and conclusions found to be (1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) contrary to constitutional right, power, privilege, or immunity; (3) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right; (4) without observance of procedure required by law; (5) unsupported by substantial evidence in any case subject to the requirements of sections 7 and 8 or otherwise reviewed on the record of an agency hearing provided by statute; or (6) unwarranted by the facts to the extent that the facts are subject to trial *de novo* by the reviewing court. In making the foregoing determinations the court shall review the whole record or such portions thereof as may be cited by any party, and due account shall be taken of the rule of prejudicial error.' "

■ It is the view of this court that the discretion vested in the Attorney General by Section 243(h)—agency action by law committed to agency discretion—is another instance of judicially nonreviewable administrative discretion arising under said § 10 of the Administrative Procedure Act, and that this court is without jurisdiction to review the order complained of which denied plaintiff's application to stay deportation.

■ Like so many others who unsuccessfully seek the security and benefits of this country, plaintiff would undoubtedly have made an excellent American citizen and a valued member of any community in which he might have settled. The granting of relief under Section 243(h), however, is not and cannot be based solely on plaintiff's good character and potential as a citizen.

The motion of defendant for summary judgment will be granted.